875 F.2d 866
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
CONTAINERPORT GROUP, Respondent.
 No. 88-5847.
 United States Court of Appeals, Sixth Circuit.
 May 22, 1989.
 
 Before KEITH and KENNEDY, Circuit Judges, and RICHARD B. McQUADE, Jr., District Judge.*
 PER CURIAM:
 
 
 1
 Petitioner, the National Labor Relations Board ("the NLRB") seeks enforcement of its order that respondent, the Containerport Group ("the Company") bargain with Teamsters Local No. 284 ("the Union"). For the following reasons, we enforce the order of the NLRB.
 
 I.
 
 2
 The Company repairs, stores and transports shipping containers used in international trade. The office of the Company's vice president and the corporate headquarters are in Cleveland, Ohio,[1] which is also the location of one of its seven plants. The other six plants are located in Columbus and Cincinnati, Ohio; Chicago, Illinois; Detroit, Michigan; St. Louis, Missouri; and Baltimore, Maryland. The vice president generally visits the Columbus and Cincinnati plants every four to six weeks, but visits the other four plants less often.
 
 
 3
 Although the Company's legal, marketing, and sales departments are located at the Cleveland headquarters, each plant serves and bills its own customers. Every plant has a general manager that reports directly to the Company vice president. The general managers are responsible for the day to day operations, including interviewing applicants, making recommendations as to who should be hired; evaluating the employees in their unit; recommending pay increases; and initiating and submitting recommendations for discharging permanent employees. The general manager is also free to hire temporary employees; he can grant or deny leave in excess of the Company's guidelines without restriction; and he has the unreviewable authority to issue oral reprimands, written warnings, and suspensions. All employees are issued an employee handbook which explains the Company's policies regarding wages, benefits and disciplinary procedures. The handbook applies to all employees except those employed at the two unionized plants in Detroit and Cleveland.
 
 II.
 
 4
 On September 14, 1987, the Union filed a petition requesting certification as the bargaining representative of all the dockmen, yardmen and mechanics working at the Company's Columbus, Ohio plant. The Company challenged the appropriateness of a single facility bargaining unit, and argued that the employees at the Columbus and Cincinnati, Ohio plants in the above classifications would have been the appropriate bargaining unit. At a hearing which disclosed the facts in section I, the Regional Director found that the Columbus plant was an appropriate unit. The Regional Director approved the petition for certification and ordered that an election be held. The Union won a representation election (11 to 4), and on November 27, 1987, the Regional Director certified the Union as the exclusive collective bargaining representative for the dockmen, yardmen, and mechanics at the Columbus plant.
 
 
 5
 On January 6, 1988, the Union filed charges of unfair labor practices after the Company refused to bargain with it. The NLRB granted summary judgment in favor of the Union, finding that the Company's refusal to bargain with the newly certified Union violated section 8(a)(5) and (1) of the National Labor Relations Act ("the Act"), amended at 29 U.S.C. Sec. 158(a)(5) and (1).
 
 III.
 
 6
 The Company contends that the NLRB abused its discretion by finding that the employees at the Columbus, Ohio plant formed an appropriate bargaining unit. However, Congress has entrusted the NLRB with broad discretion to designate "the unit appropriate for the purposes of collective bargaining...." 29 U.S.C. Sec. 159(b). Moreover, this court has held that single-plant units are presumptively appropriate for bargaining. See NLRB v. Forest City Enterprises, 663 F.2d 34, 35 (6th Cir.1981). In its attempt to overcome the single facility presumption, the Company argues that the Columbus unit had lost its individual identity as it had effectively merged with the Cincinnati plant. The Company also argues that since the payroll, marketing and advertising decisions for both the Columbus and Cincinnati plants are made at the corporate headquarters in Cleveland, a multi-store unit would have been a more appropriate designation. We disagree.
 
 
 7
 In Haag Drug Co., the NLRB explained the presumptive appropriateness of a single plant facility.
 
 
 8
 The employees in a single store form a homogeneous, identifiable, and distinct group, physically separated from employees in other stores; they generally perform related functions under immediate supervision apart from employees at other locations; their work functions, though parallel to, are nonetheless separated from the functions of employees in other stores, and thus their problems and grievances are peculiarly their own and not necessarily shared with employees in other stores.
 
 
 9
 Haag Drug Co., 169 NLRB 877, 877-878 (1968). Accordingly, the NLRB will approve a union's request for a single plant unit as long as the separate identity of that plant has not been negated by integration with another plant. See P. Ballantine & Sons, 141 NLRB 1103, 1107 (1963).
 
 
 10
 When reviewing NLRB unit determinations, this court may not make a separate determination but rather may only "consider whether the designated unit is an appropriate unit, and not whether it is the appropriate unit or if another unit may have been more suitable." Michigan Hospital Service Corp. v. NLRB, 472 F.2d 293, 294 (6th Cir.1972) (emphasis in the original).
 
 
 11
 The Columbus plant functions independently of the other plants; it does not share personnel,[2] equipment or management with Cincinnati or any of the other plants.[3] The general manager is responsible for the daily activity of the Columbus plant, as established by the corporate headquarters and has unreviewable authority to make many of the personnel decisions.[4] In addition, a considerable distance separates the Columbus plant from the Cincinnati plant.[5] Accordingly, the NLRB's finding that the employees at the Columbus plant are a "homogeneous, identifiable and distinct group" for purposes of collective bargaining at a single plant is supported by substantial evidence.
 
 
 12
 Therefore, for the reasons stated above the order of the NLRB is ENFORCED.
 
 
 
 *
 The Honorable Richard B. McQuade, Jr., U.S. District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 From the Cleveland headquarters, the Company's vice president coordinates the operation of all seven plants. Cleveland processes the payroll; sets the wage rate for each job classification; coordinates the accounting services for all seven plants; and determines the pricing scheme for the Company's services
 
 
 [2]
 The Company admitted that there was no interchange of non-supervisory employees between the Columbus and Cincinnati plants. The lack of employee exchange is a "strong indication that there is no collective 'community of interests' among a multi-plant bargaining unit." Spring City Knitting Co. v. NLRB, 647 F.2d 1011, 1016 (9th Cir.1981)
 
 
 [3]
 The Company argued that the two plants shared customers, but, in actuality, the two plants jointly billed one customer who occassionally used both plants to store the same container. This occassional cooperation is insufficient to negate the plant's autonomy
 
 
 [4]
 This court has held that a manager who exercises "considerable influence in the final decisions with respect to ... personnel matters" need not be autonomous to justify a single plant unit. Michigan Hospital Services Corp. v. NLRB, 472 F.2d 293, 296 (1972)
 
 
 [5]
 The Columbus and Cincinnati plants are 106 miles apart. Given the significant distance that separates the two plants, it is impractical to consider that a multi-plant unit would be more appropriate than a single plant unit. See Meijer, Inc. v. NLRB, 564 F.2d 737, 742 (6th Cir.1977)